[Civ. No. 20226. Second Dist., Div. One. Nov. 23, 1954.]

MURIEL MARTHA ADAMS et al., Appellants, v. HEYWARD J. DYER, Respondent.

Theodore E. Bowen for Appellants.

Lane & Lane and Donald P. Lane for Respondent.

DORAN, J.—This is an action in declaratory relief. The pleadings consist of the complaint answer, cross-complaint, and the answer to the cross-complaint. The court decided for the defendant and the plaintiffs appeal.

The parties to the action are brothers and sisters.

As appellants' brief recites, "In 1929 the father, Holmes Heyward Dyer, invented and in 1931 patented a certain device which he then called, and which he manufactured and sold during his lifetime under the commercial name of 'Oil Weigh Meter.' After his death in 1943 the invention and commercial business were, by decree of distribution in his estate, distributed to Jessie P. Dyer, the mother of the parties to this litigation. She thereupon carried on the business of manufacturing, selling and distributing the said 'Oil Weigh Meter,' and continued to do so until her death in 1946. By will she left all of her property to her six children, share and share alike. During the administration of the mother's estate the business was carried on by her executor. Her estate was about to be distributed when all of the children, her heirs, entered into the contract which is the subject of this action and appeal. It will be noted that this contract was entered into on April 26, 1947, just two days prior to the Decree of Distribution. It must be conceded that said contract was entered into as a practical way of carrying on

the family business, which contract in effect provided that two of the brothers, Heyward J. Dyer, the respondent herein, and Allison C. Dyer would carry on the business of manufacturing and selling the Oil Weigh Meter and pay to each of the other brothers and sisters a one per cent royalty.

"The contract provides, 'Said payments shall continue so long as said OIL WEIGH METERS are manufactured and sold by the said parties of the first part or their assigns or successors in interest.'

"Although the defendant Heyward J. Dyer continues to have manufactured and sell the OIL WEIGH METERS, he seeks to avoid the obligation of the contract on the ground that a partnership between Allison C. Dyer and himself was dissolved on March 20, 1950, and that since said date he has been operating the business alone. Royalties up to that date were paid to the plaintiffs.

"Respondent's contention is based upon the fact that at the same time the contract at issue was executed, the respondent and his brother, Allison C. Dyer, as between themselves, entered into a partnership contract. In an action brought by respondent Heyward J. Dyer against his partner Allison C. Dyer, the court therein adjudged a dissolution of that partnership on March 20, 1950. It is upon this judgment of dissolution that the court in the case at bar found that the instant contract was terminated. While there is nothing in the judgment of dissolution referring to the obligations of the respective partners to the appellants herein, the court after the trial of the instant case found that the dissolution of partnership terminated the contract with the appellants. The judgment was expressly based upon the same grounds."

■ The only issue is, as recited in respondent's brief, "Did the contract between Appellants, on the one hand, and the Respondent and his brother Allison on the other, terminate upon the dissolution of the copartnership on March 20, 1950, and if so, is there any evidence or law to sustain the findings of the Court that such contract did terminate on such date?" As pointed out by appellant, "There is no substantial conflict of evidence in this case on the question presented to this court. The appeal presents purely a matter of law, to-wit, the interpretation and construction of the contract dated April 26, 1947, and the determination as to whether or not the undisputed facts show any termination or ending of said contract."

Although the patent to the Oil Weigh Meter was referred

to in the contract dated, as above noted, April 26, 1947, respondent argues that, "the patent expired on March 31, 1948, and thereafter was public property, and that anybody in the world could manufacture and sell or manufacture or sell the device without let or hindrance of any person whomsoever."

As recited in respondent's brief, "In respect to the covenant on abandonment under Exhibit 8, it is provided:

" 'In the event the PARTIES OF THE FIRST PART shall abandon said business or shall suspend the operations for a period of 90 days, or shall fail to abide by the terms of this agreement . . . the parties of the second part shall have the right to proceed with the sale and manufacture of said meters in their own right.'

"Now this business was in fact abandoned by Allison, by virtue of his neglect thereof by the excessive use of alcohol, which forced his brother, the respondent herein, not being able to do so amicably, to file a petition for dissolution and liquidation, which was granted by the Court. This abandonment was not a voluntary abandonment on the part of the Allison in the sense that he decided not to stay on as a copartner in the business, but was brought about by his wrongdoing. The abandonment was, in effect, a legal abandonment, effected by a decree of dissolution and liquidation of the partnership affairs, after a vigorous contest.

. . . . . . . . . . . .

"The Court will please note that the word 'abandon' is not defined in the contract, but the only inference that can be drawn is that the conduct of Allison, which eventuated in the judgment and decree of dissolution, was the abandonment, which the parties had in mind under Exhibit 8. Appellants had the right, upon any abandonment, at their option, to proceed with the sale and manufacture of said meters in their own right."

Respondent neglected to include an important and pertinent part of the above quoted part of the contract. Actually it is as follows:

"In the event the parties of the first part shall abandon said business or shall suspend the operations for a period of ninety (90) days, or shall fail to abide by the terms of this agreement, *then and in that event all rights of the parties of the first part herein shall at the option of the second parties be terminated* and the parties of the second part shall have

the right to proceed with the sale and manufacture of said meters in their own right." (Italics added.)

It is interesting to note that the next paragraph in the contract provides that, "In the event any of the said parties of the second part shall manufacture or sell meters after the rights of the parties of the first part have been terminated as hereinabove provided then the said parties of the second part shall pay to each of the said parties of the second part one per cent (1%) of the gross selling price of said meters and all other goods or products manufactured and/or sold by the said parties of the second part.

"Said 1% of the gross selling price shall be payable quarterly."

The parties of the second part, the appellants herein, did not exercise the option.

Respondent's contention relating to the effect of the patent cannot be upheld. The patent and the expiration thereof are beside the issue and furnish no retreat for respondent.

■ With regard to the action between respondent and Allison C. Dyer, the judgment is not binding on appellants herein. They were not parties to the action. Whatever the court had in mind in that action by terminating the contract between appellants and respondent it was binding only on the parties to that action. In the within action that judgment is beside the issue and serves as no defense for respondent here.

Respondent's contentions are without support in the record both as to the facts and as to the law, and the findings as contended by appellant are not supported by the evidence.

The judgment is reversed.

White, P. J., and Drapeau, J., concurred.